UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| WENDY L. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:18-cv-718 |
| v. ) | |
| ) | Honorable Paul L. Maloney |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security, finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed her applications for DIB and SSI benefits in 2014. She alleged a March 17, 2014, onset of disability.[1] (ECF No. 9-2, PageID.76; ECF No. 9-7, PageID.435). Plaintiff's claims were denied on initial review. (ECF No. 9-4, PageID.155-59, 170-73). On July 21, 2017, plaintiff received a hearing before the ALJ. (ECF No. 9-2, PageID.63-99). The ALJ issued her decision on August 7, 2017, finding that plaintiff was not disabled. (Op., ECF No. 9-2, PageID.42-57). On May 4, 2018, the Appeals Council denied review (ECF No. 9-2,

---

[1] This is an amended alleged onset date. Plaintiff initially claimed a June 7, 2006, onset of disability on her claim for DIB benefits, and a June 1, 2005, onset of disability on her claim for SSI benefits. (ECF No. 9-6, PageID.309, 311).

PageID.26-28), rendering the ALJ's decision the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ failed to give appropriate weight to the opinions of a treating physician and a consultative examiner.

2. The ALJ's analysis at step three of the sequential evaluation process is not supported by substantial evidence.

(Plf. Brief, iii, ECF No. 15, PageID.808).

For the reasons set forth herein, I recommend that the Court affirm the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C.

§ 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73; *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").

## The ALJ's Decision

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act through June 30, 2014. (Op., 4, ECF No. 9-2, PageID.45). Plaintiff had not engaged in substantial gainful activity on or after March 17, 2014, the amended alleged onset date. (*Id.*). Plaintiff had the following severe impairments: "right knee degenerative joint disease, degenerative disc disease, obesity, anxiety disorder, mood disorder, personality disorder, and substance abuse disorders." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled a listing impairment. (*Id.*). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of light work with the following exceptions:

> claimant can occasionally climb ramps and stairs. She can occasionally balance, stoop, and crouch but can never kneel or crawl. She can understand, remember, and carry out simple instructions not requiring a specific production rate. The claimant can make simple work-related decisions. She can occasionally deal with supervisors and coworkers. The claimant can never be required to deal with the general public.

(*Id.* at 7, PageID.48).

The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and the other evidence of record. (*Id.* at 8, PageID.49). Plaintiff could not perform any past relevant work. (*Id.* at 15, PageID.56).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the vocational expert (VE) testified that there were approximately 550,000 jobs that exist in the national economy that she would be capable of performing. (ECF No. 9-2, PageID.95-96). The ALJ found that this constituted a significant number of jobs, and that plaintiff was not disabled. (Op., 15-16, PageID.56-57).

## Discussion

### 1.

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Robert Fawcett, M.D., a treating psychiatrist, and James Findley, Ph.D., a consultative examiner. (Plf. Brief, 3-8, ECF No. 15, PageID.811-16; Reply Brief, 1-5, ECF No. 19, PageID.858-62).

A.  Dr. Fawcett

Generally, the medical opinions of treating physicians are given substantial, if not controlling weight. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight

merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

"[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773 (citation and quotation omitted). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving*

*Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p[2] (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Perry v. Commissioner*, 734 F. App'x 335, 339 (6th Cir. 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]' ") (quoting *Biestek v. Commissioner*, 880 F.3d 778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart*, 710 F.3d at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart*, 710 F.3d at 376. This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart v. Commissioner*, 710 F.3d at 376 ("This procedural requirement 'ensures that the ALJ applies the treating physician

---

[2] On March 27, 2017, the Administration rescinded SSR 96-2p "for claims filed on or after" that date. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (reprinted at 2017 WL 1105348). The Administration noted that Ruling 96-2p was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.*; *see Hancock v. Commissioner*, No. 1:16-cv-1105, 2017 WL 2838237, at *7 n.2 (W.D. Mich. July 3, 2017) ("Those new rules, however, apply only to claims filed on or after March 27, 2017.").

rule and permits meaningful review of the ALJ's application of the rule.") (citation and quotation omitted).

On October 27, 2016, Dr. Fawcett completed a three-page questionnaire regarding plaintiff's ability to do mental work-related activities. (ECF No. 9-10, PageID.666-68). He offered opinions that plaintiff was "markedly" limited two areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) the ability to complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He opined that plaintiff had moderate limitations in her ability to maintain concentration and extension for extended periods, the ability to interact with the general public, and the ability to get along with coworkers without distracting them without exhibiting behavioral extremes. He indicated that plaintiff was not significantly limited in all other areas of mental functioning. Dr. Fawcett offered his opinion that psychiatric symptoms would cause plaintiff to miss 22 days of work per month. (*Id.* at PageID.666-68).

The ALJ gave Dr. Fawcett the benefit of the doubt in treating his questionnaire responses as opinions of a treating physician. On the date Dr. Fawcett completed the questionnaire, "he had met with the plaintiff on just two prior occasions." (Op., 13, PageID.54). A single visit does not suffice to establish a treating physician relationship. *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006). "Indeed, depending on the circumstances and the nature of the alleged condition, two

or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

The ALJ noted that Dr. Fawcett did not support his opinions with objective findings. (Op., 13, Page ID.54). The RFC questionnaire was a check-the-box form. ALJs are not bound by conclusory statements of doctors where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton*, 246 F.3d at 773; *see also Ellars v. Commissioner*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (ALJs "properly [give] a check-box form little weight where the physician provide[s] no explanation for the restrictions entered on the form and cite[s] no supporting medical evidence."); *see also Nicholas v. Berryhill*, No. 16-14072, 2018 WL 2181463, at *3 (E.D. Mich. Jan. 25, 2018) ("Courts in this circuit have held that a medical source statement in 'check-the-box' format, by itself, provides little to no persuasive value — to hold otherwise would neglect its glaring lack of narrative analysis.") (citation and quotation omitted).

The ALJ found that Dr. Fawcett's opinions that plaintiff would have marked limitations in sustained concentration and persistence and would be absent from work 22 days every month were not consistent with the other evidence in the record. (Op., 13, PageID.54). The ALJ observed that, during medication reviews, plaintiff told Dr. Fawcett that her depression and anxiety were somewhat better. (*Id.*) (citing ECF No. 9-10, PageID.663, 672). The ALJ noted that in December 2016, plaintiff related that "mood wise, she was doing pretty well." (*Id.*). Plaintiff related to Dr. Fawcett that it was "hard to be depressed when she [was] taking care of her young

grandson so often." (ECF No. 9-10, PageID.672). "[I]n March 2017, another psychiatrist, who took over for Dr. Fawcett after he retired, noted that [plaintiff's] conditions were relative[ly] stable." (Op., 13, PageID.54). In addition, the ALJ also found that plaintiff's activities were inconsistent with marked limitations in sustained concentration and persistence. For example, on November 1, 2016, plaintiff reported to her therapist that she was watching her grandson after school and was walking a dog for money during the day. (ECF No. 9-10, PageID.669). On December 14, 2016, plaintiff related that she was providing care for her grandson "four to five days a week." (Op., 13, PageID.54) (citing ECF No. 9-10, PageID.672).

Dr. Fawcett's statement regarding "how often plaintiff would likely miss work was conjecture, not a medical opinion." *Ellis v. Commissioner*, No. 1:15-cv-726, 2016 WL 3735776, at *4 (W.D. Mich. July 13, 2016). I find no violation of the treating physician rule.

    B.    <u>Dr. Findley</u>

Plaintiff argues that the ALJ should have given greater weight to the opinions of Dr. Findley, a consultative examiner. (Plf. Brief, 3-5, PageID.811-13; Reply Brief, 1-4, PageID.858-61).

The opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ was not "under any special obligation to defer to [a consultative examiner's] opinion[s] or to explain why [s]he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744

(6th Cir. 2011). Nonetheless, the ALJ explained her rationale for giving less weight to Dr. Findley's opinions. *See Norris v. Commissioner*, 461 F. App'x at 439.

On March 17, 2014, Dr. Findley conducted a psychological evaluation. (ECF No. 9-8, PageID.534-37). "No medical or psychological records were included in the referral," but Dr. Findley was able to retrieve his own reports from "September 2010 and August 2004 evaluations." (*Id.* at PageID.534). Plaintiff related that she lived alone in a subsidized apartment. (*Id.* at PageID.535). She denied any history of psychiatric hospitalizations and she was not currently in therapy. (*Id.*). Plaintiff stated that she was isolated and socially avoidant. (*Id.*). She reported that she could manage her own money and that she was no longer abusing alcohol. (*Id.*). Dr. Findley described plaintiff as generally pleasant and cooperative, despite her obvious anxiety or nervousness. She expressed frustration that she had previously been denied disability benefits and was being "forced" to go through the process again. (*Id.* at PageID.536). Plaintiff's stream of mental activity was spontaneous and generally logical. Her personal narrative tended to be tangential and somewhat confused, however. Dr. Findley found no evidence of a formal thought disorder or other psychotic process. She appeared to be of average intelligence and her cognitive functions were grossly intact. He found no evidence of impairments in immediate, recent or remote memory. He described plaintiff's "common sense-judgment" as average. (*Id.*).

Dr. Findley did not administer any tests. (*Id.*). He offered the following diagnosis: agoraphobia, with occasional panic attacks; major depressive disorder, moderate, single episode; alcohol use disorder, in sustained remission; and other specified personality disorder (Cluster B traits). (*Id.*). Dr. Findley offered his opinion that plaintiff was capable of understanding simple instructions, but would have difficulty carrying out even routine, repetitive tasks on a consistent and sustained basis. (*Id.* at PageID.536-37).

The ALJ gave "less weight" to Dr. Findley's assessment because, although he had evaluated plaintiff in the past, his March 17, 2014, evaluation was a one-time, limited examination. (Op. 13, PageID.54). In addition, the ALJ found that Dr. Findley's opinion was not consistent with the record. (*Id.* at 14, PageID.55). Plaintiff's disagreement with the weight that the ALJ gave to Dr. Findley's opinion does not provide a basis for disturbing the ALJ's decision.

C.  Dr. Jones Smith

Plaintiff argues that the ALJ gave too much weight to the opinions of Barbara Jones Smith, Ph.D., a state agency psychological consultant. (Plf. Brief. 5-7, PageID.813-815; Reply Brief, 1-4, PageID.858-61). This issue is waived because it does not appear in plaintiff's statement of issues. *See Toll v. Commissioner*, No. 1:16-cv-705, 2017 WL 1017821, at *3 (W.D. Mich. Mar. 16, 2017) (The Notice that this Court issues in social security cases "caution[s] that failure to include an issue in the Statement of Errors constitutes a waiver of that issue.").

Moreover, it is meritless.  On August 11, 2014, Dr. Jones Smith reviewed plaintiff's records and offered opinions that plaintiff's impairments did not meet or equal any listing impairment, and that plaintiff retained the mental RFC to perform one or two step tasks on a sustained basis.  (ECF No. 9-3, PageID.129-33,144-48).

"State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Downs v. Commissioner*, 634 F. App'x. 551, 554 (6th Cir. 2016) (citation and quotation omitted); *see Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.") (citation and quotation omitted).

The ALJ gave considerable weight to Dr. Jones Smith's opinions because they were "consistent with the record, that shows the [plaintiff] does not have disabling symptoms."  (Op., 12, PageID.53).  The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing the evidence.  *See Ulman v. Commissioner*, 693 F.3d at 713.

I find no basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ's findings at step three of the sequential analysis that plaintiff did not meet the requirements of listing impairments 12.04 and 12.06 are not supported by substantial evidence. (Plf. Brief, 9-13, PageID.817-21; Reply Brief, 5, PageID.862).

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). "Because satisfying the listings yields an automatic determination of disability . . . the evidentiary standards [at step three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014). A claimant bears the burden of demonstrating that she meets or equals a listing impairment at the third step of the sequential evaluation.[3] *Elam*, 348 F.3d at 125. An impairment that only meets some of the criteria does not satisfy plaintiff's burden. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

---

[3] It is possible for a claimant to provide evidence of medical equivalence to a listing. *See Bolton v. Commissioner*, 730 F. App'x 334, 336-37 (6th Cir. 2018); *see also* 20 C.F.R. §§ 404.1526, 416.926. To demonstrate medical equivalence, the claimant must present "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531; *Thacker v. Social Security Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Secretary of Health & Human Servs.*, 835 F.2d 161, 164 (6th Cir. 1987)).

Plaintiff did not offer any argument in her prehearing brief (ECF No. 9-7, PageID.435-39) or at the hearing (ECF No. 9-2, PageID.63-99) that her impairments met or equaled the requirements of any listing impairment. It is against this backdrop that plaintiff's claim of reversible error is considered.

The ALJ found that plaintiff did not meet or equal the requirements of "listings 12.04 (Depressive, bipolar and related disorders) [and] 12.06 (Anxiety and compulsive disorders)[.]" (Op., 5, PageID.46). Plaintiff did not satisfy the Part B severity requirements. (*Id.*). Plaintiff was required to prove one extreme limitation or two marked limitations[4] in the following areas:

1. Understanding, remembering, or applying information;
2. Interacting with others;
3. Concentrating, persisting, or maintaining pace;
4. Adapting or managing oneself.

20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The ALJ found that plaintiff had moderate limitations in each of the four areas. (Op., 5-6, PageID.46-47).

---

[4] ALJs employ a five-point rating scale in evaluating the effects of a mental disorder: none, mild, moderate, marked, and extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2). A "mild limitation" means the individual is "slightly limited" in functioning "independently, appropriately, effectively, and on a sustained basis." *Id.* A "moderate limitation" exists if the individuals "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* A "marked limitation" means that individuals; functioning "independently, appropriately effectively, and on a sustained basis is seriously limited." *Id.* An "extreme limitation" is where the individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

Plaintiff argues that the ALJ should have found marked limitations in the areas of interacting with others and adapting or managing oneself, and she cites portions of the record that could have supported such findings.[5] (Plf. Brief, 9-13, PageID.817-21). Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction.[6] Indeed "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003).

The ALJ found that plaintiff had moderate limitations in interacting with others:

> [T]he claimant has mental impairments, which include anxiety disorder and personality disorder (B3F/5; B4F/4; B7F/22, 25; B9F/3). She indicated that she has issues getting along with others (B5E/6; see also B4E/1,6). In fact, she reported panic attacks when she is away from her apartment or going out in a crowded public place (B3F/4). However, she stated that she has contact with one of her neighbors and one of her sisters. She also indicated that she talks by telephone with her son (B3F/4). She has a history of watching her grandchild on a regular basis (Testimony; B2F/16; B7F/35, 38). In March 2016, she explained that she

---

[5] I have considered all the evidence that plaintiff cited in her brief and reply brief. The task of locating this evidence was unnecessarily complicated by plaintiff's use of certified administrative transcript page numbers rather than the actual PageID numbers and failure to follow the citation format required under W.D. MICH. LCIV.R. 10.9.

[6] Dr. Fawcett's opinions presented an obvious obstacle if plaintiff had attempted to provide the ALJ with a developed argument claiming marked limitations in these areas. Dr. Fawcett opined that plaintiff had only moderate limitations in her ability to interact with the general public and get along with co-workers. (ECF No. 9-10, PageID.668). Further, he opined that plaintiff was not significantly limited in all areas of adaptation and in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*).

> has a couple of friends in her neighborhood that she trusts (B7F/9). Mental status examinations routinely showed that she had appropriate mood and affect (B5F/24; B8F/7, 22, 26, 36, 58). She was cooperative and had appropriate eye contact (B7F/9, 18-20, 23, 27, 31, 41, 49). The evidence supports a finding that the claimant has no more than a moderate limitation in interacting with others.[7]

(Op., 6, PageID.47). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401. The ALJ's finding that plaintiff had moderate limitations in the area of interacting with others is supported by substantial evidence.

The ALJ found that plaintiff had moderate limitations in adapting or managing oneself:

> The record shows that the claimant has the ability to regulate her emotions. On occasion, her affect was anxious and she was unkempt. (B7F/9, 25, 29). However, in general, providers noted that the claimant was cooperative and had appropriate eye contact (B7F/9, 18-20, 23, 27, 31, 41, 49). She also had appropriate mood and affect (B5F/24; B8F/7, 22, 26, 36, 58). The claimant reported it is difficult to leave her apartment and she does not perform personal care on a regular basis (Testimony). However, the record indicates that she is able to make plans independently of others. For instance, during a March 2015 consultative examination, she reported living alone in a subsidized apartment. She stated that she was capable of managing her own money (B3F/4). Additionally, she is able to watch her grandson several days a week (Testimony; B7F/35, 38). In fact, she noted that she does activities with her grandchild such as painting rocks and crafts. She stated that she tries to do things with him that will teach him something (Testimony). The evidence supports a finding that the claimant has no more than a moderate limitation in adapting or managing oneself.[8]

---

[7] The evidence that the ALJ cited supporting her finding regarding the area of interacting with others appears in the record at ECF No. 9-2, PageID.80-83; ECF No. 9-7, PageID.381, 398; ECF No. 9-8, PageID.476, 535-36, 549; ECF No. 9-9, PageID.575; ECF No. 9-10, PageID.643, 652-53, 656-57, 659, 661, 665, 669, 672, 675, 683; ECF No. 9-11, PageID.692, 707, 711, 721, 743, 763).

[8] The evidence that the ALJ cited supporting her finding regarding the area of adapting or managing oneself appears in the record at ECF No. 9-2, PageID.69-87;

(Op., 6, PageID.47). The ALJ's finding that plaintiff had moderate limitations in adapting or managing oneself is supported by substantial evidence. The ALJ's finding is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772.

I find no basis for disturbing the Commissioner's decision.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: August 16, 2019          /s/ Phillip J. Green
                                PHILLIP J. GREEN
                                United States Magistrate Judge


### **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

---

ECF No. 9-8, PageID.535; ECF No. 9-9, PageID.575; ECF No. 9-10, PageID.643, 652-54, 657, 659, 661, 663, 665, 669, 672, 675, 683; ECF No. 9-11, PageID.692, 707, 711, 721, 743).